

FILED & ENTERED

SEP 04 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY sumlin    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No: 2:11-bk-34162-NB |
| Jeffrey Mark Freeman, | Chapter: 13 |
| | **MEMORANDUM DECISION DENYING DEBTOR'S MOTION FOR SANCTIONS FOR ALLEGED VIOLATION OF DISCHARGE INJUNCTION** |
| Debtor. | <u>Hearing Date</u>:<br>Date:  February 8, 2018<br>Time:  8:30 AM<br>Ctrm:  1545 |

The debtor agreed to a last-minute interlineation of the order confirming his second amended chapter 13 plan.  The debtor apparently believes that the inserted language had two effects: (1) reducing roughly in half the debt he owed to BAC Home Loans ("BAC"), which was secured by a senior lien against a rental property, and (2) automatically avoiding that lien when he paid the reduced debt.  In fact the language inserted into the order does not mention avoidance of the lien or reduction of the total debt secured by that lien, and this Court is not persuaded that it accomplished either of those things.

Years later the debtor obtained a discharge of his *in personam* liabilities.  He neither sought nor obtained any order avoiding the lien.  Instead he simply demanded a

1  reconveyance of the lien from BAC's successor in interest, Nationstar Mortgage, LLC

2  ("Nationstar").  The debtor did not explain to Nationstar his interpretation of the confirmation

3  order, or even refer Nationstar to that order.

4       The debtor now argues that Nationstar's attempts to enforce its lien for several

5  months after he received his discharge, and its initial refusal to reconvey its deed of trust,

6  amounted to a willful violation of the discharge injunction of 11 U.S.C. § 524(a).  He seeks

7  millions of dollars in a motion for sanctions.

8       But, as noted above, the confirmation order had no effect on Nationstar's lien or the

9  debt secured by that lien.  Nationstar had every reason to believe that it continued to have

10  *in rem* rights that it could enforce after the discharge was entered.

11       Finally, in his reply papers, the debtor has cited a different order of this Court that

12  granted a motion in which he requested authority to pay off his Plan early.  That motion did

13  not seek, and this Court's did not grant, any modification of Nationstar's *in rem* rights.  True,

14  the language of that order is susceptible of being misinterpreted, but Nationstar was entitled

15  to take a different (and correct) interpretation of that order.  In any event, as soon as the

16  debtor notified Nationstar of that order, Nationstar reconveyed its deed of trust.

17       In short, the debtor has not met his burden to show any knowing violation of the

18  discharge injunction.  The sanctions motion will be DENIED by separate order, without leave

19  to amend.

20  **1. LEGAL STANDARDS**

21       Claims typically are bifurcated into a secured claim "to the extent of the value" of the

22  creditor's interest in property of the bankruptcy estate and an unsecured claim for the

23  remainder.  11 U.S.C. § 506(a)(1).  Unsecured claims typically are discharged.  But any *in*

24  *rem* liability can survive the discharge.

25       Specifically, a discharge in bankruptcy "operates as an injunction against the

26  commencement or continuation of an action, the employment of process, or an act, to

27  collect, recover or offset any such debt as a <u>personal liability</u> of the debtor."  11 U.S.C.

28  § 524(a)(2) (emphasis added).  A creditor who "<u>knowingly</u> violates the discharge injunction"

can be "held in contempt under § 105(a)." *In re Taggart*, 548 B.R. 275, 286 (9th Cir. BAP 2016) (emphasis added).

Because the discharge injunction only prohibits efforts to collect debts as a personal liability of the debtor, "secured creditors can foreclose their liens after the discharge is entered." *In re Marino*, 577 B.R. 772, 783-84 (9th Cir. BAP 2017) (citations and internal quotation marks omitted)).  This creates some tension for a lienholder whose lien has <u>not</u> been avoided: it is prohibited by § 524(a)(2) from communicating with a discharged debtor in an effort to extract payment as a personal liability, but it is usually required to communicate with that same debtor in order to enforce its lien, such as by giving notice of any foreclosure. *Id.* at 784.

To reconcile these directives a lienholder "may communicate with a discharged debtor" to the extent "necessary to preserve or enforce its lien rights" but it "may not attempt to induce the debtor to pay the debt."  *Id.*  "Even if a creditor threatens only to enforce its surviving lien, that threat will violate the discharge injunction <u>if</u> the evidence shows that the threat is really an effort to coerce payment of the underlying discharged debt." *Id.* (citation omitted, emphasis added).

Proving such coercion, and that it amounts to a <u>knowing</u> violation of the discharge injunction, is easier said than done.

> First the movant must prove that the [alleged] contemnor knew that the discharge injunction was applicable to [its] claim:  [T]he Ninth Circuit has crafted a strict standard for the actual knowledge requirement in the context of contempt before a finding of willfulness can be made. This standard requires evidence showing the alleged contemnor was aware of the discharge injunction and <u>aware that it applied to his or her claim</u>. Whether a party is aware that the discharge injunction is applicable to his or her claim is a fact-based inquiry which implicates a party's <u>subjective belief, even an unreasonable one</u>.
>
> Second, the contemnor must have intended the action that violated the injunction. The focus is on whether the creditor's conduct violated the injunction and whether that conduct was intentional; it does not require a specific intent to violate the injunction.  [*Marino*, 577 B.R. 772, 782 (internal citations and quotation marks omitted).]

Finally, to establish contempt a movant must show violation of a "specific and definite" order.  *Marino*, 577 B.R. 772, 783.  Although the discharge injunction itself acts as a "specific and definite" order that *in personam* liability is discharged, the questions in this

1    case include the dollar amount of *in rem* liability and whether that was also discharged (by

2    avoidance of the lien).  To the extent that the debtor relies on the confirmation order or any

3    other orders on those issues, he must show that the language of any such order is "specific

4    and definite."

5        **2. DISCUSSION**

6        This bankruptcy case was filed on June 3, 2011 (the "Petition Date").  It did not

7    progress quickly.

8        One of the properties owned by the debtor was at 28832 Benjie Way, Lancaster, CA

9    93536 (the "Benjie" property).  The debtor's bankruptcy Schedules A and D value the Benjie

10   Property at $215,000 and they list a "First Lien on Residence [sic[1]]" of over $300,000.  Dkt.

11   1 at PDF pp. 12, 17.

12       BAC filed its proof of claim (claim no. 8-1) asserting that it had loaned approximately

13   $320,000 to the debtor, secured by the Benjie property.  Due to interest and other charges,

14   the total debt as of the petition date had increased to $379,125.14.

15       The debtor did not prosecute any motion to avoid BAC's lien in whole or in part.

16   Therefore, nearly one year after the Petition Date and following numerous continuances,

17   this Court set a final confirmation hearing and directed the debtor to file a confirmable

18   chapter 13 plan or the case would be dismissed.  On May 17, 2012 the debtor filed his

19   second amended plan (dkt. 65, the "Plan").

20       **a.  The Plan Did Not Purport To Reduce The Debtor's *In Rem* Liability, Or**

21       **Avoid BAC's Lien – It Left Those Things For Future Determination**

22       The Plan says nothing about reducing the debtor's *in rem* liability or avoiding BAC's

23   lien.  To the contrary, it leaves those things to future proceedings.  As set forth below, that is

24   in keeping with local practice (provided that this does not make the plan infeasible).

25

26   _____

27   [1] In fact, the Benjie property is not the debtor's residence.  It is a rental property.  At one point in these lengthy
     proceedings this Court erroneously referred to the Benjie property as the debtor's residence, but that error has

28   played no part in the disposition of this matter.  Similarly, it turns out that BAC held both the senior lien and the
     junior lien on the Benjie property; but any initial confusion on that issue has played no part in the disposition of
     this matter.

As for the dollar amount of BAC's claim, local practice is that "a filed claim will control the amount owed" to secured creditors, "unless an objection is filed."  *See* Confirmation Order (dkt. 73) at 2 § 3.b.  The Plan is even more flexible.  It starts by alleging, in Class 3, that BAC's secured claim was $215,000 and proposing to pay that amount in full over sixty months with a tiny amount for interest at 0.24%; but the Plan goes on to include supplemental language suggesting that the debtor expected to adjust the dollar amount of this claim in future, after conducting an appraisal:

> Debtor and lender [BAC] are attempting to schedule an interior inspection for appraisal.  Property was previously valued at no more than $215,000.  <u>BAC is to receive the current value of the Property in equal monthly payments</u> with interest over the course of the plan. … [Plan, dkt. 65, p. 4, Class 3 (emphasis added)]

The point is, the Plan contemplates that any modification of BAC's rights would be the subject of future proceedings.

As for any lien avoidance, the debtor did not alter the standard language in the local form of Plan.  That language states, just above the signatures of the debtor and his attorney, that when property of the bankruptcy estate revests in the debtor – typically five years after the petition date – that property will be:

> <u>subject to all liens</u> and encumbrances in existence when the case was filed, <u>except those liens avoided by court order</u> or extinguished by operation of law. [Plan, dkt. 65, p. 7 (emphasis added).]

In other words, all property would remain <u>subject to</u> BAC's lien unless that lien was "avoided by court order" in some future proceeding.  That accords with the Bankruptcy Code, other Local Forms, and local practice.

The Bankruptcy Code requires, with inapplicable exceptions, that holders of secured claims "retain the lien securing such claim" until the end of the bankruptcy case.  11 U.S.C. § 1325(a)(5).[2]  The Bankruptcy Code does not specify the mechanism by which a lien is avoided at the end of the case, but typically it is a two-step process.

---

[2] The statute requires that the lien be retained until "discharge under [11 U.S.C. § 1328]."  11 U.S.C. § 1325(a)(5)(B)(i)(I)(bb).  Sometimes the triggering event for being able to avoid a lien is not discharge but completion of all plan payments.  Sometimes parties in this district require both a discharge and completion of all plan payments.  Regardless which option the parties choose, the point is that all property remains subject to liens until the end of the case, meaning either a chapter 13 discharge or completion of all chapter 13 payments

1    First, there is a preliminary order providing that if the debtor completes all plan

2 payments and/or obtains a chapter 13 discharge then the lien will be avoided (a "Preliminary

3 Lien Order"). *See, e.g.,* Local Form F 4003-2.4.ORDER (one example of a Preliminary Lien

4 Order).[3]  Second, once those conditions are satisfied – typically five years later – the debtor

5 can file a declaration seeking entry of a second order that actually avoids the lien (a "Lien

6 Avoidance Order").  *See, e.g.,* Local Form F 4003-2.4.ORDER.AFTERDISCH (one example

7 of a Lien Avoidance Order).[4]

8    Consistent with this practice, the pre-printed portions of the confirmation order

9 contemplate that separate proceedings will be required for any lien avoidance.  If the

10 confirmed plan provides that a real property lien "is to be avoided pursuant to 11 U.S.C.

11 [§] 506," but "no [such] motion or adversary proceeding has been filed" or no lien avoidance

12 order or judgment has been entered, then the Chapter 13 Trustee is authorized to make

13 disbursements on that claim until those things occur.  Dkt. 73, Attachment §§ 21-22.

14    Based on all of the foregoing, BAC and its successor in interest, Nationstar, had

15 every reason to expect that the full amount of their claim would continue to be secured by a

16 lien that would remain in existence unless and until several additional things occurred.

17 Specifically, (i) in order to reduce the dollar amount of the debt secured by the lien the

18 debtor would have to file a claim objection, and (ii) in order to avoid the lien in whole or in

19 part the debtor would have to (A) file a separate motion to avoid the lien, (B) obtain a

20 Preliminary Lien Order, (C) obtain a discharge and/or finish all payments under the Plan

21 (whatever the Preliminary Lien Order required), and (D) apply for and obtain a Lien

22

23    or both.  *See generally In re Blendheim,* 803 F.3d 477, 492 n.5 (9th Cir. 2015); *In re Zimmer,* 313 F.3d 1220

24 (9th Cir. 2002); *In re Lam,* 211 B.R. 36 (9th Cir. BAP 1997).

25    [3] Those forms are only mandatory for junior liens on a chapter 13 debtor's principal residence, but they
illustrate local practice.  This Court notes that the 2017 amendments to the Bankruptcy Rules now permit lien

26 avoidance in a chapter 13 plan, but those rules did not govern this case so there was no reason to believe that
the debtor's plan itself would serve as a Preliminary Lien Order.  *See, e.g.,* Rule 3015.1(c)(3) (Fed. R. Bankr.

27 P.).

28    [4] There are good reasons for this two-step approach under 11 U.S.C. § 506.  Title companies prefer a Lien
Avoidance Order so that they have a specific and definite order that avoids a lien, not merely an order
providing for the future avoidance of a lien depending on events that would have to be separately verified.

Avoidance Order.  The next question is whether the language inserted into the confirmation
order should have changed these expectations.

### b.  The Language Inserted Into the Confirmation Order Did Not Reduce The Debt To BAC Or Affect Its Lien

BAC filed an objection to confirmation (dkt. 69).  It did not object to the $215,000
stated amount of its secured claim or the added language about possible adjustment of that
dollar amount, but it argued that a 0.24% interest rate was too low, and that the rate must
be at least 6.75%.

This Court declined to confirm the Plan over BAC's objection.  The debtor then
negotiated a last-minute deal with BAC, which they agreed to memorialize by inserting the
following language into the confirmation order entered on June 20, 2012 (dkt. 73):

> **For purpose of plan confirmation**, the **value** of the real property commonly known as 28832 Benjie Way, Lancaster, CA 93536 is determined to be **$194,000**. The amount of the **secured claim** which shall be paid, in full, during the life of the chapter 13 plan is **$169,340**, with interest at the rate of 6.75% for the remaining 48 months of the Chapter 13 Plan.  [Dkt. 73, p. 3, § 1.b (emphasis added).]

This language has several ambiguities.  First, it says nothing about lien avoidance.

Second, it is not clear why the dollar amount of the agreed secured claim was
$169,340, which is less than the $194,000 agreed value of the collateral.  The debtor's
bankruptcy Schedule D (dkt. 1, at PDF p. 17) does not list any encumbrance senior to
BAC's first lien so, if the debtor had filed a motion seeking a Preliminary Lien Order, one
would expect that such an order would have reduced the secured claim to $194,000, not
$169,340.[5]  This implies that the $164,340 is only a limitation on payments to be made
under the Plan, rather than a reduction in the total debt secured by the lien.  In other words,
BAC's entire claim of $379,125.14 would continue to be secured by its lien unless and until
the debtor filed a motion to avoid that lien and obtained a Preliminary Lien Order and, later,

---

[5] Perhaps there were some outstanding real estate taxes or another senior encumbrance that the debtor had not disclosed in his bankruptcy schedules or had allowed to accrue postpetition, thereby reducing BAC's secured claim.  But whatever the explanation, nothing in the confirmation order or other evidence before this Court clarifies those issues.

an Order Avoiding Lien.  That is highly unusual, but then so are numerous aspects of this case.

Third, the introductory clause ("For purpose of plan confirmation") supports this reading by implying that the reduced amount is solely for confirmation and not for any other purposes such as lien avoidance.  That is the most plausible reading of this language inserted into the confirmation order.

That reading is further supported by some fatal flaws in the debtor's (unclear) interpretation of the confirmation order.  The debtor might be asserting that the confirmation order acted like a Preliminary Lien Order.  But that reading would leave open the issues of (i) which dollar amount – $194,000 or $169,340 – should be treated as the Preliminary Lien Order amount and (ii) whether any subsequent lien avoidance and issuance of a Lien Avoidance Order would require (A) completion of all Plan payments, or (B) a chapter 13 discharge, or (C) both.  Alternatively, the debtor might be asserting that the confirmation order acted like a Preliminary Lien Order plus a Lien Avoidance Order all rolled into one. Under that reading, BAC would have been agreeing to the immediate reduction of its lien down to $194,000 or $169,340 (it is unclear which amount), regardless whether the debtor ever obtained a discharge or completed his Plan payments.  But why would BAC agree to such an unprecedented thing?  In any event, the dollar amount remains ambiguous ($194,000 or $169,340), so this Court cannot find that there was any meeting of the minds even if, hypothetically, the parties had intended for the confirmation order to impose some dollar amount of reduction in BAC's lien and *in rem* rights.  In sum, the debtor's apparent reading(s) of the confirmation order is unpersuasive and unworkable.

For all of the foregoing reasons, there is no evidence that BAC or Nationstar should have expected anything other than the usual treatment of their claim and lien.  The lien would continue to secure the full amount of the debts owed to them unless and until the debtor (A) filed a separate lien avoidance motion, (B) obtained a Preliminary Lien Order, (C) obtained a discharge and/or completed of all Plan payments (depending on what the Preliminary Lien Order provided), and (D) sought and obtained a Lien Avoidance Order.

### c. Over One Year After Entry Of The Confirmation Order, The Debtor And BAC's Successor In Interest, Nationstar, Disagreed About How To Interpret That Order

On November 20, 2012, a notice of transfer of BAC's claim to Nationstar was filed. Dkt. 89. That notice lists the dollar amount of the claim as the full $379,125.14 asserted in the proof of claim, not any reduced amount.

In December of 2013, approximately a year and a half after the Plan was confirmed, the debtor filed a motion (dkt. 109) to refinance the property and a companion motion to modify his chapter 13 plan (dkt. 110). The debtor sought to pay off Nationstar's lien in a reduced amount: $117,876.00, which he claimed was the remaining balance owed to Nationstar under the Plan.

There were numerous problems with these motions, including whether they had even been properly served on Nationstar. This Court issued orders (dkt. 118, 119) setting those motions for hearing to address those problems and because "the Motions are vague and difficult to comprehend, so this court might have misconstrued them." Dkt. 119, p. 2, ¶ (5).

Eventually this Court denied both motions. Dkt. 129, 130. Although that denial was without prejudice, the debtor gave up on these motions so this Court never ruled on the proper interpretation of the language that had been inserted into the confirmation order. But as set forth below those motions put the debtor on notice of Nationstar's position (1) that its debt and lien had not been modified at all, and alternatively (2) that any final reduction of its debt required further proceedings.

Nationstar's position was set forth in its oppositions to both motions. It recognized that the debtor asserted a current balance of approximately $117,876.00, "pursuant to an alleged modification of Creditor [Nationstar]'s lien via the Debtor's Chapter 13 Plan, [h]owever pursuant to Creditor's proof of claim filed in the Debtor's bankruptcy case, Creditor's total claim as of the date of filing was approximately $379,125.14." Dkt. 125, p.4:5-8 (emphasis added). In other words, Nationstar disputed whether the total debt secured by its lien had been reduced at all.

As for the alleged lien avoidance, Nationstar argued:

the Debtor fails to provide sufficient evidence that Creditor's lien was modified by the Chapter 13 Plan.  Pursuant to the [confirmation] Order, which requires a motion or adversary proceeding to avoid a lien … the Debtor has failed to take the proper action necessary to modify Creditor's lien.  [Dkt. 125, p. 4:8-12]

In other words, Nationstar was arguing that, because the debtor had not followed the usual practice of filing a separate lien avoidance motion, its lien had not been modified at all.

This Court agrees.  As set forth above, the most plausible reading of the language inserted into the confirmation order is that it limits payments under the Plan to $169,340 without either (i) reducing the total debt of $379,125.14 or (ii) avoiding the lien securing that debt.

To be clear, BAC could have, if it wished, waived the requirement of a separate motion and order.  But as set forth above there are insurmountable problems with reading the confirmation order that way.  Moreover, as Nationstar argued in the alternative, the debtor could not pay off its lien in a reduced amount during the middle of the Plan period, before obtaining a discharge.  Dkt. 125, p. 4:19-22.

In any event, regardless what the language inserted into the confirmation order actually means, Nationstar took a defensible position that the agreed language neither reduced the debt secured by the lien nor avoided the lien.  Therefore, unless and until the debtor sought and obtained a Lien Avoidance Order, Nationstar reasonably could take the position that it was free to pursue its *in rem* rights.

> **d.    The Debtor's Later Motion To Modify His Plan Did Not Seek, And This Court Did Not To Grant, Any Adjustment Of The Debt Owed To Nationstar Or The Lien Securing That Debt**

On April 14, 2014 the debtor filed another a motion to modify his plan, in which he proposed to pay off his Plan early "from a refinance or sale of his Benjie property within 60 days [after any order granting the motion]."  Dkt. 134 (the "Payoff MoMod").  It is sometimes permissible to pay off a plan early, but that is no substitute for a lien avoidance motion.  *See In re Sunahara,* 326 B.R. 768, 781 (9th Cir. BAP 2005); *and see also In re Mattson,* 468 B.R. 361 (9th Cir. BAP 2012).

Nothing in the Payoff MoMod mentioned any reduction in the debt owed to Nationstar or avoidance of Nationstar's lien.  Nationstar did not oppose the motion.

At the hearings on the Payoff MoMod counsel for the debtor emphasized that the debtor was <u>not</u> seeking any refinance motion: the debtor was solely seeking to pay off his Plan early.  So far as this Court was concerned, that was further assurance that nothing in the Payoff MoMod was intended to alter the rights of Nationstar unless it <u>consented</u> to a reduced payoff.

The Payoff MoMod was continued from May 8, to May 29, August 21, and October 23, 2014 to address the analysis under *Sunahara* (not for anything to do with Nationstar).  Eventually this Court was persuaded to issue an order (the "Payoff Order") granting the Payoff MoMod.  Dkt. 144, 152.

This Court only intended to (and only did) authorize the debtor to pay off his Plan early notwithstanding the usual requirement to commit five years' of disposable income to <u>unsecured</u> creditors.  *See* 11 U.S.C. § 1325(b)(1)(B).  This Court did not intend to (and did not) affect any secured creditors' *in rem* rights at all, except to the extent that such creditors consented to a change in those rights.  As discussed below, however, the debtor has a different interpretation of the Payoff Order.

### e.  The Debtor Obtained A Discharge And Then Demanded That Nationstar Cease All Foreclosure Activity and Reconvey Its Lien, Without Explaining Why

On June 22, 2015 this Court issued an order granting the debtor a chapter 13 discharge.  In July of 2015 the debtor apparently sent a letter to Nationstar demanding that it "cease all foreclosure activity."  *See* dkt. 207, p. 4 ¶ 15, & Ex. C (the "Debtor's 7/15 Letter").[6]

---

[6] Nationstar has denied that the Debtor's Letter was properly addressed or received when it was sent (dkt. 208, p.8:11-20), but that issue is not material to this disposition so this Court does not address it.

The Debtor's 7/15 Letter asserts that Nationstar "HAS **NO SECURED INTEREST WHATSOEVER**" in the Benjie property.  Dkt. 207, Ex. C, at PDF p. 21 (emphasis in original).  There is no explanation for this statement.

The Debtor's 7/15 Letter then provides a string of citations to docket entries without explaining how be believes they may have affected Nationstar's debt or its lien.  He cites one of his motions to modify his plan (dkt. 134), the order granting that motion (dkt. 144) (which was superseded by dkt. 152), the certificate that he had completed his Plan payments and sought a discharge (dkt. 157), the Chapter 13 Trustee's notice of intent to file a final report (dkt. 172), the Trustee's declaration of a lack of response to that notice (dkt. 175), the Trustee's final report (dkt. 176), the order discharging the Trustee (dkt. 179), and the order discharging the debtor's *in personam* liability (dkt. 181).  The Debtor's 7/15 Letter then cites 11 U.S.C. §§ 350(a), 1302(b)(1), 1328(a), and Rule 5009 (Fed. R. Bankr. P.) and the Fair Debt Collection Practices Act and states that the discharge prohibits any attempt to collect a debt that has been discharged.  Understandably, given that the debtor is not an attorney, the letter does not distinguish between *in personam* and *in rem* liability, or explain how the discharge of his personal obligations on any debt would alter Nationstar's *in rem* rights to foreclose on its lien against the Benjie property.

On April 5, 2016, the debtor filed a motion (dkt. 184) to reopen this case to seek damages against Nationstar for allegedly violating the discharge injunction.  This Court reopened this case but at first the debtor did not file any papers to seek such damages.

The motion to reopen this case notes that in December of 2015 Nationstar sent the debtor a mortgage statement claiming that a "past due amount of $40,588.08 was owed on the Benjie Property in addition to a principal balance of $278,010.97" (*see* dkt. 207, Ex. D) and thereafter Nationstar recorded a Notice of Default against the Benjie property and was "actively pursuing foreclosure."  Dkt. 184, p. 2 ¶¶ 6-8.  Attached to that motion is the first page of a letter from Nationstar's attorneys dated December 15, 2015 stating:

**… IF YOU ARE IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR AS AN**

**ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY PORTION OF DEBT FROM YOU PERSONALLY.**

…

Dear JEFF FREEMAN:

**YOUR LOAN HAS BEEN REFERRED TO OUR FIRM FOR FORECLOSURE**

[The letter then notifies the debtor of various "foreclosure alternatives"] [Dkt. 184, Ex. A (emphasis and capitalization in original)]

Despite this initial effort to pursue foreclosure, Nationstar recorded a Notice of Rescission of Notice of Default approximately four months later, on April 28, 2016 (after some sort of communications from counsel for the debtor, which are not in the record).  Dkt. 191 ¶ 7 & Ex. A.  The debtor's attorneys also claim that on May 13, 2016 Nationstar notified them that it was in the process of preparing a reconveyance of its deed of trust on the Benjie property (*id.* ¶ 8) but, assuming that is what Nationstar's representative stated (solely for purposes of discussion), there is no evidence that any preparation of a reconveyance was anything more than an internal step to prepare paperwork, so as to be <u>ready</u> to act <u>if</u> the parties were able to resolve their disagreements.

Approximately a year after this case was reopened, on December 8, 2016, the debtor filed a Motion for Order to Show Cause for Violation of the Discharge Injunction by Creditor Nationstar Mortgage LLC (the "Sanctions Motion") (dkt. 195).  The Sanctions Motion alleges that the pendency of foreclosure proceedings had caused tenants not to pay rent (*see also* dkt. 207, pp. 5-6 ¶¶ 19-20), and the debtor seeks compensatory damages for violation of the discharge injunction of § 524.  The motion also seeks emotional distress and punitive damages, arguing that

> [T]he Debtor has suffered emotional distress as a result of the action of Nationstar Mortgage LLC because of the stress due to the <u>foreclosure activity</u> started by Nationstar Mortgage LLC by the filing of the Notice of Default, the resulting <u>foreclosure activity</u> and the loss of rents that resulted from its actions.  [Dkt. 195, p. 8:1-5 (emphasis added)]

As the above-quoted language illustrates, the Sanctions Motion focuses on the foreclosure activity – *i.e.,* the *in rem* activity, not any attempt to collect a debt as an *in personam* liability.  The Sanctions Motion also alludes to "numerous phone calls, facsimiles, emails and other written correspondence" (dkt. 195, p. 3 ¶ 11) but no copies of any

facsimiles, emails or other written correspondence were provided at this time (apart from the letter from Nationstar's attorneys about foreclosure, quoted above).[7]

In sum, neither the Debtor's 7/15 Letter nor the Sanctions Motion explained how Nationstar's *in rem* rights had been affected at all – how the debt to Nationstar had been allegedly reduced to the amount paid by the debtor under the Plan, or how Nationstar's lien allegedly had been avoided. True, it is understandable that the debtor might have <u>thought</u> that the confirmation order did those things, at least if he did not think too carefully about the above-noted ambiguities in the language inserted into that order. But the debtor never mentioned the confirmation order in the Debtor's 7/15 Letter or the Sanctions Motion, let alone explained his interpretation of that language, and the debtor had not sought or obtained any Lien Avoidance Order.

Nationstar nevertheless figured out that the debtor was relying on the language that was inserted into the confirmation order, because its opposition addresses that language, which Nationstar refers to as a "cramdown" provision. Dkt. 208, p. 2 ¶ 8. Nationstar argues:

> Debtor's claim that Nationstar is in contempt and violated the discharge injunction is premised on numerous unsubstantiated allegations that Debtor reached out to Nationstar and advised it that the lien was to be released due to the cramdown, despite having never filed a Motion to Value Collateral. Debtor has also failed to meet his burden in showing that Nationstar knew of the discharge injunction was applicable and acted with intent to violate the injunction. [Dkt. 208, p. 4:6-10]

On April 7, 2017 this Court assigned this dispute to mediation. Dkt. 210, 215. The matter did not settle. Dkt. 236.

### f. Not Until March 16, 2017 Did The Debtor Cite A Different Order, Which Can Be (Mis)Read As A Lien Avoidance Order; And On The Same Day Nationstar Reconveyed Its Lien

On March 16, 2017 the debtor filed his declaration (dkt. 207) in support of the Sanctions Motion. The declaration notes that this Court granted the debtor's Payoff MoMod and states that on or about October 1, 2014 he "paid off the balance of the Chapter 13

---

[7] The debtor's declaration, filed later (dkt. 207), does provide copies of other documents that apparently were sent to him. But as discussed below, those documents add nothing to his arguments.

1  Plan." *Id.*, p. 3 ¶¶ 7-8.  Normally all that would establish is that the debtor was entitled to a

2  discharge of <u>unsecured</u> debts.  But the declaration adds that in order to pay off the Plan he

3  refinanced the Benji Property and Nationstar was "paid in full the amount of their secured

4  claim <u>per the Order [sic] on the Motion to Value [sic] the Benjie Property</u>."  *Id.* (emphasis

5  added).  There was no such "Motion to Value" the Benjie property – that is the whole point

6  of Nationstar's opposition to the debtor's unfounded assumption that its lien had been

7  reduced.  So the debtor's references to a "Motion to Value" the Benjie property and an order

8  granting that motion are a mystery.[8]

9       The debtor apparently means the Payoff Order.  That order, a copy of which is

10  attached to his declaration, includes the following provisions (with "blacklining" marks

11  omitted and emphasis added):

12      A. Debtor's counsel has prepared this order which has been approved by the
13         Chapter 13 Trustee, Kathy A Dockery (hereinafter referred to as Chapter 13
       Trustee).
14      B. Debtor may shorten his plan from 60 months to a final lump sum payment which
       pays off his entire plan, namely:
15        a. <u>The remaining balance owed **on the senior secured claim** of Nationstar</u>
16          <u>Mortgage (Benjie Property) in the total amount of principal and accrued</u>
        <u>interest through August 28, 2014, of $123,649.62</u>.
17        …
      [other payoff balances <u>under the Plan</u> are listed]
18      C. The source of this is to come from the sale or refinance of a new senior or
19        junior mortgage against [the Benjie property] or a new junior lien on Debtor's
      property located at 14263 Yellowstone Lane, Canyon Country, CA 91387 ….
20        …
    E. <u>Upon payment of such Claims, the Nationstar's **secured claim** will be deemed</u>
21        <u>satisfied in accordance with the modified plan and any **junior** liens will be</u>
22        <u>deemed **avoided** upon avoided/reconveyed</u>, and the Trustee is authorized to
      prepare this case for Debtor's discharge. The Court will retain jurisdiction to
23        enforce the terms of this order and otherwise as to any liens.
      …
24      G. A certified copy of this Order may be used by escrow, title, and/or lender and
      recorded with the County Recorder to confirm Debtor's authority with respect to
25        the early plan payoff and discharge. [Dkt. 154 (copied at dkt. 207, Ex. A)
      (emphasis added).]

26

27

28

---

[8] There was a motion to avoid a <u>junior</u> lien (dkt. 14), but neither that motion nor the order thereon (dkt. 32) purported to have any effect on the <u>senior</u> lien of BAC/Nationstar.

1   Based on the emphasized language quoted above, the debtor apparently conflates

2   the treatment of Nationstar's <u>secured claim</u> with avoidance of its <u>lien</u> and evisceration of its

3   *in rem* rights.  For numerous reasons, the debtor's apparent interpretation is wrong.

4   First, the Payoff Order is addressing what is needed to pay off amounts owed <u>under</u>

5   <u>the Plan</u>, not the full amount of any surviving liens.  Compare the statement that any "junior

6   liens" on the Benjie property "will be deemed <u>avoided</u>" with the statement that Nationstar's

7   "secured claim" (<u>not</u> its lien) will be "deemed <u>satisfied</u>."  Dkt. 154 (copied at dkt. 207, Ex. A)

8   (emphasis added).

9   Second, this distinction between the "secured claim" and the "lien" is reinforced by

10   the language inserted into the confirmation order.  Recall that language: "<u>For purpose of</u>

11   <u>plan confirmation</u>, the <u>value</u> of the [Benjie property] is determined to be <u>$194,000</u> [but the]

12   amount of the **secured claim** which shall be paid, in full, during the life of the chapter 13

13   plan is **$169,340** …."  Confirmation Order (dkt. 73), p. 3, § 1.b (emphasis added).  As

14   discussed above, this language says nothing about lien avoidance; it unaccountably

15   reduces the "secured claim" <u>below</u> the property value; and its stated purpose is solely for

16   plan confirmation; all of which implies that the "secured claim" is different from Nationstar's

17   lien and its *in rem* rights, and that, consistent with the usual local practice, those rights

18   would not be affected unless and until the debtor filed and served a <u>separate</u> motion and

19   obtained a Preliminary Lien Order and a Lien Avoidance Order.

20   Third, the Payoff MoMod is a standard Local Form that says nothing about any lien

21   avoidance, so it would have been highly improper for counsel for the debtor to have lodged

22   a proposed order on that motion including any sort of lien avoidance.  This Court presumes

23   that the debtor's counsel had no such improper intent at the time, so it would be

24   inappropriate to interpret the Payoff Order now to do something that nobody intended it to

25   do at the time.[9]

26

27   ───────────────────────

28   [9] In retrospect perhaps this Court should have modified the proposed Payoff Order to be more clear.  But this
Court was under the misimpression that the debtor was not contemplating any reduced payoff to Nationstar
without Nationstar's <u>consent</u>.  His prior attempt to do so via a refinancing motion had been rejected, and
counsel for the debtor had emphasized to this Court at the hearings on the Payoff MoMod that the debtor had

1    In any event, because the Payoff MoMod never asked for such relief, Nationstar was

2    entitled to presume that no such relief was granted.  Moreover, even if the debtor had

3    pointed Nationstar to the actual language of the Payoff Order (and there is no evidence that

4    he did so), that language does not actually affect Nationstar's *in rem* rights.  *See also* dkt.

5    256 at pp. 3-4, nn. 2-3 (Nationstar's brief pointing out reasons not to read the Payoff Order

6    as a lien strip order).

7    In fact, this Court finds that it completely understandable that Nationstar would have

8    had a difficult time understanding the debtor's assertions that its lien allegedly was avoided

9    and its *in rem* rights allegedly were nullified, because this Court has had a very difficult time

10   understanding the debtor's arguments.  In an attempt to parse those arguments this Court

11   has reviewed most of documents on the docket (which has over 250 entries), as well as

12   records from dozens of hearings.[10]

13   If the debtor's counsel had been more explicit about quoting the Payoff Order and

14   explaining their interpretation of that order then Nationstar easily could have sought

15   reconsideration under Rule 9024 (Fed. R. Bankr. P.) on the ground that it had had no notice

16   that the Payoff MoMod was intended to affect its *in rem* rights.  This Court would have

17   granted such a motion because of that lack of notice and because, as noted above, this

18   Court never intended to affect Nationstar's *in rem* rights and does not interpret the Payoff

19   Order as doing so.

20   Finally, even supposing for the sake of argument that the Payoff Order were an

21   unambiguous lien stripping order (which it is not), as soon as the debtor finally explained

22   why he thought that Nationstar no longer had a lien against the Benjie property, Nationstar

23   immediately abandoned any attempt to pursue *in rem* rights.  On the same day that the

24

25   not renewed his motion to refinance the Benjie Property, and that there would be a 100% payoff to creditors
     (which, in retrospect, apparently was limited to unsecured creditors).

26   [10] The records reviewed by this Court include those for hearings on the following dates (some of which turned
     out to be irrelevant or brief, but which nevertheless collectively took substantial time to review): 1/19/2012,
27   3/20/2012, 5/29/2012, 6/12/2012, 7/19/2012, 8/7/2012, 9/25/2012, 10/30/2012, 11/20/2012, 12/11/2012,
     1/8/2013, 4/2/2013, 5/21/2013, 1/2/2014, 2/6/2014, 4/3/14, 5/8/2014, 5/29/2014, 8/21/2014, 10/23/2014,
28   5/7/2015, 7/9/2015, 7/28/2016, 10/13/2016, 12/8/2016, 2/2/2017, 3/2/2017, 3/30/2017, 6/22/2017, 7/20/2017,
     8/17/2017, 8/22/2017, 10/5/2017, 11/2/2017, 12/7/2017, 2/8/2018, and 3/8/2018.

1  debtor filed his declaration with the Payoff Order attached (*i.e.,* on March 16, 2017)

2  Nationstar sent a Substitution of Trustee and Full Reconveyance to the Los Angeles

3  Recorder's Office.  Dkt. 208, p. 4 ¶ 17, & Ex. A.  Such immediate action is the opposite of

4  any knowing intent to violate the discharge injunction.[11]

5          **g.  The Debtor's Unauthorized Supplemental Papers Add Nothing To His**

6              **Arguments**

7        After the failed mediation the debtor filed a "Status Report, Reply And Request For

8  Judicial Notice Re: Stay Violations And In Support Of Damages" and supporting declaration

9  of the debtor.  Dkt. 237 (the "Reply").  The Reply increases the debtor's demand to

10 $893,964.85 in alleged actual damages plus $15 million in punitive damages.

11       The debtor also filed a "Supplement To Motion For Sanctions For Violating The

12 Automatic Stay [sic]" (dkt. 254, the "Supplement") which apparently is intended as an

13 unauthorized supplement to the Sanctions Motion (dkt. 195).  Nationstar filed: an opposition

14 to the Supplement (dkt. 256); a request for judicial notice of this Court's tentative ruling in

15 earlier proceedings (dkt. 257), which is hereby granted; and evidentiary objections (dkt. 258)

16 to the exhibits attached to the Supplement, which are hereby sustained except as to

17 Exhibits A and C thereto (the parties' correspondence, and a copy of *In re Marino,* 577 B.R.

18 772). The debtor filed reply papers (dkt. 259 & 260, collectively the "Supplemental Reply").[12]

19      *Marino* was issued while this matter has been pending, so to the extent the

20 Supplement addresses that decision this Court is persuaded to accept the Supplement.

---

22 [11] By then, according to the debtor, he had already suffered substantial harm.  In his declaration filed on March
23 16, 2017, the debtor states: "Without the Reconveyance of the Deed of Trust, I cannot afford to make the
payment on Benjie Property because I cannot rent out the Benjie Property and I cannot the refinance the
24 Benjie Property."  Dkt. 207, p. 6 ¶ 24.  He concluded, "I have lost $87,000 in rent because of the actions of
Nationstar and I have incurred at least $72,500 in new interest charges and have paid $3,000 in attorney's
25 fees plus I owe an additional $3,825 in attorney's fees for a total of $162,000 as a result of the actions of
Nationstar" and "I ask that this Court award me the compensatory amount of $165,825 and an additional 9
26 times multiple of this amount as punitive damages for Nationstar Mortgage LLC's willful failure to re-convey the
Deed of Trust on the Benjie Property to me."  *Id.,* pp. 7-8 ¶¶ 32-33.  Any harm suffered by the debtor is
27 extremely unfortunate but, as explained in the text, Nationstar was in no way at fault for any of that.

28 [12] The debtor also sought discovery.  But he abandoned that effort after this Court sustained Nationstar's
objection that the debtor had pursued the wrong procedural mechanism for discovery.  *See* dkt. 238, 240, 242-
252, 264.

The parties' correspondence speaks for itself, and this Court will exercise its discretion to accept that correspondence in evidence despite the facts that (1) it should have been provided with the Sanctions Motion over a year earlier (if the debtor thought it was relevant), and (2) the declaration of the debtor's counsel authenticating the correspondence is not as robust or clear as it could be.

All other arguments in the Supplement and the Supplemental Reply are stricken.  In any event they are unpersuasive for the following reasons.

First, despite the reference to the automatic stay in the title of his Supplement, the debtor does not explain how the automatic stay (11 U.S.C. § 362(a)) is relevant.  Assuming that the debtor is arguing that Nationstar's enforcement of its *in rem* rights prior to the discharge violated the automatic stay, those arguments fail for the same reasons that his arguments fail as to the period after the discharge was entered.  The debtor has not shown that Nationstar had any actual knowledge that its *in rem* rights had been affected (and, in fact, they had not).

Second, to the extent the debtor attempts to come within *Marino* by pointing to Nationstar's communications, he falls far short.  The creditor in *Marino* sent twenty-two collection letters to the discharged debtors, some of which were internally contradictory and seven of which had no disclaimer language whatsoever.  *Marino,* 577 B.R. 772.  In contrast, the December 15, 2015 foreclosure letter quoted above states:

> … **IF YOU ARE IN BANKRUPTCY OR HAVE BEEN DISHARGED IN BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY PORTION OF DEBT FROM YOU PERSONALLY.**
> …
> Dear JEFF FREEMAN:
>
> **YOUR LOAN HAS BEEN REFERRED TO OUR FIRM FOR FORECLOSURE**
>
> [The letter then notifies the debtor of various "foreclosure alternatives"] [Dkt. 184, Ex. A (emphasis and capitalization in original)]

This is in keeping with other communications from Nationstar.  It apparently sent a earlier letter to the debtor's counsel, dated August 4, 2015, acknowledge receipt of the

Debtor's 7/15 Letter, stating that Nationstar is "in the process of reviewing your concerns," and adding:

> If this debt is in or has been discharged in a bankruptcy proceeding, be advised that this communication is <u>not an attempt to collect a debt against you</u>. Please note, however, <u>we reserve the right to exercise the legal rights only against the property</u> securing the original obligation. [Dkt. 254, Ex. A, at PDF p. 4 (emphasis added). *See also id.,* at PDF p. 5.]

Other communications from Nationstar are similarly careful to advise the debtor that it is only pursuing its *in rem* rights, not any *in personam* liability (using plain English to convey those legal concepts). One letter, dated January 5, 2016, informs the debtor that the foreclosure process has been recommenced, informs him of various alternatives to foreclosure, and states "if you have received a discharge of the debt referenced herein in a bankruptcy proceeding, <u>this is not an attempt to impose personal liability upon you</u> for payment of that debt. In the event you have received a bankruptcy discharge, <u>any action taken to enforce the debt will be taken against the property only</u>." Dkt. 254, Ex. A, at PDF p. 11 (emphasis added). The Notice of Default (recorded 12/31/2015) contains essentially identical language. Id., Ex. G, at PDF p. 35.[13]

In sum, the debtor has not met his burden to show that Nationstar violated the discharge injunction at all, let alone did so knowingly. This Court has stricken the debtor's "argument" (or brief reference) to the automatic stay, but in the alternative this Court finds and concludes that the debtor has failed to show any violation of that or any other law or order. Nationstar has not been shown to have done anything wrong at all.

### 3. CONCLUSION

Whatever harm the debtor suffered from Nationstar not releasing its lien sooner is tragic. But the debtor has the burden to show, by clear and convincing evidence, that

---

[13] The debtor points to a form 1099-INT Interest Statement reporting interest income of $706.55, which he interprets as having showed "the IRS that I had paid [sic] interest on the loan when I had not [sic]." Dkt. 207, p. 5 ¶ 16, & Ex. E. The debtor fails to explain how that tax document constitutes any sort of attempt to collect a debt as an *in personam* liability. The debtor also provides several letters, dated September 30, 2015, October 6 and 14, 2015, and March 4, 2017, but they merely advise the debtor and his counsel that review is ongoing, and inform them of new contact information. Dkt. 254, Ex. A, at PDF pp. 5-10 & 13. Again, the debtor fails to explain how this constitutes any sort of attempt to collect a debt as an *in personam* liability.

Nationstar knew the discharge injunction applied to its acts, and that it nevertheless proceeded in willful violation of the discharge injunction.  Based on the evidence described above, the debtor has not met that burden.  Nor can he.

Nationstar is directed to lodge a proposed order DENYING the Sanctions Motion without leave to amend, for the reasons stated in this Memorandum Decision.

### 

Date: September 4, 2018

Neil W. Bason
United States Bankruptcy Judge